# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA M. CLEMENTE,        )
                                  )
            Plaintiff,       )      Civil Action No. 10-159 Erie
                                  )
      v.                   )
                                  )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,  )
                                )
           Defendant.     )

## <u>MEMORANDUM OPINION</u>

McLAUGHLIN, SEAN J., District Judge.

## I.    INTRODUCTION

Debra M. Clemente ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Plaintiff filed her application on April 6, 2006, alleging disability since January 1, 1993 due to "[f]ibromyalgia, post traumatic stress disorder, depression, panic disorder, anxiety attacks, diverticulitis, herniated disc in back, essential tremors and chronic neck injury" (AR 62-64; 72).[1] Her application was denied, and she requested an administrative hearing before an administrative law judge ("ALJ") (AR 34-35; 56). Following a hearing held on October 3, 2007, (AR 518-574), the ALJ found that Plaintiff was not entitled to a period of disability or DIB under the Act (AR 15-27). Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

## II.    BACKGROUND

Plaintiff was 43 years old on the date of the ALJ's decision and has a high school education earned through a G.E.D. (AR 77; 525).  She has past relevant work experience as a daycare worker and cashier (AR 73; 527).  Plaintiff claims disability on the basis of both physical and mental impairments, and it is undisputed that the relevant time period with respect to that determination is from June 15, 1993, Plaintiff's amended onset date (AR 529-530), through September 30, 1997, her date last insured (AR 68).

The medical records reveal that Plaintiff was treated by Robert J. Esper, D.O., from April 19, 1991 until July 12, 1999 for her complaints of pain and anxiety (AR 96-148).  With respect to Plaintiff's physical impairments during the relevant time period, Dr. Esper's treatment notes reveal ongoing complaints of cervical, thoracic and/or low back pain.  Her physical examinations revealed some restricted motion in her cervical spine, with some mild spasms noted at her visits in March and December 1993 (AR 116-117).  Dr. Esper diagnosed Plaintiff with chronic recurring cervical pain, performed manipulation therapy and prescribed Tylenol 4 for her pain complaints (AR 116).

At her office visit in January 1994, Plaintiff reported an improvement in her symptoms, although she still experienced some cervical pain and recurring cephalgia (AR 115).  Her physical examination revealed some restriction on right rotation of her cervical spine with some mild spasm noted (AR 115-116).

On June 30, 1995, Plaintiff presented for a premarital physical examination, and Dr. Esper reported that her entire physical examination was within normal limits (AR 114).  Her physical examination was also unremarkable at her October 31, 1995 office visit (AR 112).

In 1996, Plaintiff complained of a recurrence of low back pain after shoveling snow and cervical pain (AR 110-111).  Her physical examinations revealed a good range of motion in her lower back with some pain on extreme flexion, extension flexion was within normal limits, and no radicular signs or symptoms were present (AR 111).  She was diagnosed with chronic recurring low back pain and somatic dysfunction of the cervical, thoracic and lumbar spine (AR

110-111). Dr. Esper performed manipulative therapy and prescribed muscle relaxants (AR 110-111).

In 1997, Plaintiff continued to complain of neck and back pain (AR 107-109). Physical examinations revealed some dysfunction in the cervical, mid-thoracic and lumbosacral spine, as well as some decreased range of motion of the cervical spine (AR 107-109). Dr. Esper diagnosed Plaintiff with chronic myofacial pain syndrome (AR 107-109). He performed osteopathic manipulation therapy and prescribed muscle relaxants, and recommended that she continue her efforts at weight reduction and exercise (AR 107-109).

Following the relevant time period, Plaintiff was seen by various providers for her musculoskeletal complaints. From January 4, 2001 through July 18, 2003, Plaintiff was seen by Frank Mozdy, M.D., who diagnosed Plaintiff with cervical headaches, fibromyalgia, and cervical degenerative disease (AR 149-174). He recommended increased physical activity and weight loss for her symptoms (AR 154).

Plaintiff was also seen by Eric Christie, D.C., from November 1998 through September 17, 2004, who performed standard chiropractic care (AR 456-493). A cervical spine MRI dated March 27, 2002 showed mild disc degeneration with diffuse bulging at the C5-6 and C6-7 levels (AR 468). No significant spinal stenosis was found (AR 468).

From October 10, 2003 through September 12, 2007, Plaintiff was seen by David Overare, M.D. and Robert Stuart, M.D. (AR 200-444). Treatment notes show that Plaintiff was treated with pain medication, muscle relaxants, aqua therapy, acupuncture, a TENS unit and physical therapy (AR 324). An MRI of Plaintiff's cervical spine dated September 22, 2006 was negative (AR 329).

On June 6, 2006, James Darcy, a state agency adjudicator, reviewed the medical evidence of record and opined that Plaintiff could perform heavy work (AR 36-42). Mr. Darcy indicated that with respect to Plaintiff's condition at her date last insured, Plaintiff had a history of back pain with muscle spasm, but the evidence failed to establish a loss of range of motion or any neurologic limitations (AR 41). Mr. Darcy noted that Plaintiff's treatment had been routine and conservative in nature, she had not attended physical therapy, she was able to care for her young

child at home, and her medications had been relatively effective in controlling her symptoms (AR 41). He found no evidence of a condition that would have prevented work activity on or before the date last insured (AR 41).

Plaintiff's treatment for her mental impairments during the relevant time period reveal that she was first diagnosed with acute anxiety at her April 6, 1994 office visit with Dr. Esper (AR 115). She reported that she was extremely upset because her child had recently been diagnosed with leukemia and was scheduled for a bone marrow transplant (AR 115). Dr. Esper prescribed Tranxene for her anxiety symptoms (AR 115). When seen on April 22, 1994, Dr. Esper switched her medication to Xanax since the Tranxene had not helped her symptoms (AR 115). Dr. Esper noted that she appeared to also have some mild depression, and diagnosed her with acute anxiety and depression (AR 155).

On May 20, 1994, Plaintiff reported that Xanax had been ineffective in managing her symptoms (AR 115). She reportedly was under a great deal of stress with her child, and Dr. Esper discontinued the Xanax and restarted her on a higher dosage of Tranxene (AR 115). At her June 16, 1994 office visit, Dr. Esper noted that Plaintiff appeared "quite distraught" and reported that she would be in Philadelphia for four months while her child was undergoing the transplant (AR 114). She requested a prescription for Valium, stating that it worked best for her (AR 114). She was diagnosed with anxiety and depression and prescribed Valium (AR 114).

On January 30, 1995, Plaintiff reported that she still experienced some anxiety attacks which had been controlled with Valium (AR 113). At her May 16, 1995 office visit for a recheck of her depression, she stated that she noticed some success with Zoloft (AR 113). She was diagnosed with anxiety and depression, and her Zoloft prescription was refilled (AR 113). On October 31, 1995, Plaintiff reported that she was going through a stressful time with her son's illness and while the Zoloft helped, she still had some residual symptoms (AR 112). Dr. Esper diagnosed her with depression and increased her Zoloft dosage (AR 112).

In 1996, Plaintiff was seen on May 31, 1996 for treatment of her anxiety symptoms, and reported that her child had suffered a stroke and had a seizure disorder (AR 111). Dr. Esper

noted that Plaintiff required anti-anxiety medication periodically (AR 111). She was diagnosed with acute anxiety and prescribed Valium (AR 111).

In 1997, Dr. Esper diagnosed Plaintiff with recurring anxiety disorder at her January 2, 1997 office visit (AR 109). He noted that Plaintiff was quite upset over her son's illness and he prescribed Valium (AR 109). On September 19, 1997, Plaintiff complained of anxiety symptoms and shortness of breath (AR 108). Dr. Esper diagnosed her with anxiety and depression, as well as neuromuscular chest pain, possibly stress related (AR 108). He noted that her stress could be triggered by her son's upcoming evaluation in October (AR 108). Plaintiff was given a sample of Prozac (AR 108). When seen by Dr. Esper on October 24, 1997, Plaintiff reported that she was doing quite well on the Prozac (AR 106).

Following the relevant time period, from November 2003 through July 2007, Plaintiff sporadically attended counseling with Rebecca Clark, L.S.W., at the Center for Personal and Family Growth (AR 190-199). At her initial evaluation in November 2003, she was diagnosed with depression and partner relational problems and assigned a global assessment of functioning[2] ("GAF") score of 60 (AR 198-199). On mental status examination several years later in April 2007, Ms. Clark reported that Plaintiff exhibited a depressed mood, but had an appropriate affect, fair memory, fair impulse control, fair insight/judgment, normal motor activity, normal speech, and logical thought content (AR 193).

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 to 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 41 to 50 may have "[s]erious symptoms (e.g., suicidal ideation ....)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 31 to 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood"; of 21 to 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., ... suicidal preoccupation)" or "inability to function in almost all areas ...; and of 11 to 20 may have "[s]ome danger of hurting self or others ... or occasionally fails to maintain minimal personal hygiene ... or gross impairment in communication...." *Id.*

Plaintiff was also seen by Ann McDonald, Ph.D. from March 2001 through mid-June 2007 (AR 445-455). In November 2003, Dr. McDonald diagnosed Plaintiff with post traumatic stress disorder and generalized anxiety, and assigned her a GAF score of 40 (AR 454). On October 29, 2007, Dr. McDonald completed a Mental Residual Functional Capacity Questionnaire (AR 446-450). Dr. McDonald concluded that, since 2002, Plaintiff had "[n]o useful ability to function" in the following areas: maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; and set realistic goals or make plans independently of others (AR448-449). Dr. McDonald stated that Plaintiff's mental impairments would cause her to miss work more than four days per month (AR 450).

On July 5, 2006, Sharon Becker Tarter, Ph.D., a state agency reviewing psychologist, concluded that Plaintiff had no medically determinable impairment and noted that there was no mental health evidence in the file prior to Plaintiff's date last insured (AR 175; 187).

Plaintiff, her husband James Clemente, and Fred Monaco, a vocational expert, testified at the hearing held by the ALJ on October 3, 2007 (AR 518-574). Plaintiff testified that she stopped working in June 1993 due to pain (AR 530). She stated that she was treated by Dr. Esper, who performed manipulative therapy (AR 533). Physical therapy provided only temporary relief (AR 534). She further claimed that during the relevant time frame, she suffered from severe headaches on a daily basis, which gradually worsened over time (536). She claimed that her neck pain and headache pain also spread to her back, arms and legs (AR 537). Almost any type of activity aggravated her pain (AR 538). Plaintiff indicated that prescribed pain medication relieved her pain for a short period of time (AR 538). Plaintiff testified that during the relevant time period, she could walk for one block, stand and/or sit for fifteen to thirty minutes before needing to change positions, lift ten pounds, and bend at the waist (AR 544).

Plaintiff testified that she had no mental health problems or treatment prior to the birth of her son (AR 545). Her depression and anxiety symptoms, which began in March 1994 after her son was diagnosed with leukemia, prevented her from working (AR 531-532; 545-546). She stated that Dr. Esper prescribed medications for her symptoms, and she began treatment with Dr. McDonald in January 1995, who changed her medications throughout the years (AR 547-548; 553). Plaintiff claimed that she cried uncontrollably on a daily basis and suffered from episodic panic attacks (AR 554-555). She stated she had difficulty performing activities of daily living and relied on her husband to perform household chores between 1993 and 1997 (AR 557-558). Mr. Clemente testified that he did the grocery shopping, cooking, laundry, and other household chores during mid-1990's and helped care for their son (AR 566-567).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was limited to sedentary work that did not involve frequent head or neck rotation to the extreme range of motion, and was precluded from crawling, kneeling, climbing or balancing (AR 570). Such individual would further be limited to simple, repetitive tasks involving routine work processes, settings or locations, and would be unable to engage in high stress work, defined as work involving high quotas or close attention to quality production standards (AR 570). The vocational expert testified that such an individual could perform the sedentary positions of a surveillance system monitor, telephone service worker and document preparer (AR 571).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 15-27). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-8). She subsequently filed this action.

### III.    STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV.    DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status. 42 U.S.C. § 423(a), (c); *Matullo v. Bowen*, 926 F.2d 240, 244 (3rd Cir. 1990) (claimant is required to establish that he became disabled prior to expiration of his insured status); *see also* 20 C.F.R. § 404.131. The ALJ found that Plaintiff met the disability insured status requirements of the Act through September 30, 1997 (AR 15). Therefore, Plaintiff must show that she was disabled on or prior to that date for purposes of entitlement to disability insurance.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

8

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an

individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged
> in "substantial gainful activity" and (2) that he suffers from a severe medical
> impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant
> shows a severe medical impairment, the [Commissioner] determines (3) whether
> the impairment is equivalent to an impairment listed by the [Commissioner] as
> creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the
> claimant bears the burden of showing (4) that the impairment prevents him from
> performing the work that he has performed in the past. Id. If the claimant
> satisfies this burden, the [Commissioner] must grant the claimant benefits unless
> the [Commissioner] can demonstrate (5) that there are jobs in the national
> economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37
> (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that Plaintiff met the insured status requirements

of the Act through September 30, 1997, and that she had not engaged in substantial gainful

activity since June 15, 1993, her amended disability onset date (AR 17). The ALJ further found

that she had the following severe impairments: fibromyalgia and a mental impairment, but

determined at step three that she did not meet a listing (AR 17-23). The ALJ found that she was

able to perform unskilled sedentary work with a sit/stand option, but she must avoid frequent

head and neck rotations to extreme ranges of motion, and crawling, climbing, kneeling, and

balancing (AR 23). Plaintiff could only perform simple tasks, involving routine, repetitious

work processes and locations, while avoiding high stress, high production quotas, and close

attention to quality production standards (AR 23).

At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the

vocational expert at the administrative hearing (AR 26). The ALJ concluded that Plaintiff's

statements concerning the intensity, persistence and limiting effects of her symptoms were not

entirely credible (AR 24). Again, I must affirm this determination unless it is not supported by

substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first challenges the ALJ's residual functional capacity ("RFC") assessment. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.* 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. See 20 C.F.R. § 404.1546. In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121.

The ALJ found that the medical evidence established that Plaintiff had, *inter alia*, a severe mental impairment, but concluded that she retained the mental RFC to perform work involving only simple, routine, repetitive work processes and locations, while avoiding high stress, with no high production quotas or close attention to quality production standards (AR 23). Plaintiff argues that the ALJ failed to "sufficiently acknowledge the non-exertional problems Claimant experienced pre-DLI." *See* ECF No. 9, Plaintiff's Brief p. 1. In support, she points to Dr. Esper's treatment records, arguing that they were "not given appropriate consideration" by the ALJ. *See* ECF No. 9, pp. 1-3. The record does reflect, however, that the ALJ considered Dr. Esper's treatment records. For instance, he concluded that the treatment notes did not reflect a severity of symptoms that would be disabling (AR 21; 24). He also noted that Dr. Esper offered no opinion as to whether Plaintiff was capable of working (AR 24).

All of these findings are supported by the record. Dr. Esper's records do not, in fact, contain any findings of work-related limitations. Plaintiff's argument essentially rests upon her contention that because she was being treated for anxiety and depression by Dr. Esper, she was unable to work. Disability is not determined by the mere presence of an impairment, but rather by the effect that an impairment has upon an individual's ability to perform substantial gainful activity. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991); *Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 (3rd Cir. 2004) ("[Plaintiff's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result … a claimant must show that the impairment resulted in disabling limitations."). Here, Plaintiff has presented no evidence that her

mental impairments significantly caused any further limitations during the relevant time period other than those accounted for by the ALJ in his RFC assessment.

Plaintiff next challenges the ALJ's credibility determination. An ALJ must give serious consideration to a claimant's subjective complaints of pain, even when these complaints are not completely supported by objective evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993). There must be medical signs and laboratory findings that demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain alleged and which, when considered with all of the other evidence, leads to a conclusion that the claimant is disabled. *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3rd Cir. 1984); 20 C.F.R. § 404.1529(a).

In addition to the objective medical evidence, Social Security Ruling ("*SSR*") 96-7p and the regulations provide that the ALJ should consider other factors, such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.R.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. Finally, the ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

I find that the ALJ evaluated Plaintiff's credibility consistent with the above standards. The ALJ considered the subjective complaints of Plaintiff and determined that, although her medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment (AR 24). In making this determination, the ALJ reasoned that Dr. Esper's clinical findings prior to Plaintiff's date last insured did not support Plaintiff's claim of disabling pain (AR 24). In this regard, Dr. Esper's treatment note entries for 1993 and 1994 demonstrate that Plaintiff's physical examinations revealed only some restricted motion in her cervical spine, and only mild spasms

were noted (AR 115-117). Her physical examinations in 1995 were within normal limits (AR 112; 114). In 1996, her physical examinations revealed a good range of motion in her lower back with some pain noted on extreme flexion, her extension flexion was within normal limits, and there were no radicular signs or symptoms present (AR 111). In 1997, only mild dysfunction was found in the cervical, mid-thoracic and lumbosacral spine, with some decreased range of motion in her cervical spine (AR 107-109). Contrary to the Plaintiff's contention, I find that the ALJ properly pointed to countervailing objective medical evidence in discounting her complaints of pain.

In addition to his consideration of the objective medical evidence, the ALJ further observed that Plaintiff received only conservative treatment for her musculoskeletal complaints (AR 19). In this regard, the record reflects that Dr. Esper performed osteopathic manipulation therapy with good results and prescribed pain medications, and further recommended that Plaintiff lose weight and exercise (AR 107-109; 115-116). Finally, the ALJ found that Plaintiff was able to care for her personal needs and was reasonably able to function to a degree that she could have performed unskilled work (AR 23). Plaintiff reported that she was able to perform activities of daily living until her husband returned from work, and was able to care for her disabled son (AR 80-81). In sum, the ALJ's credibility determination with respect to Plaintiff's subjective complaints is supported by substantial evidence.

Plaintiff next claims that the ALJ failed to include Dr. McDonald's opinions in fashioning her RFC. Dr. McDonald completed a medical source statement on October 29, 2007, and opined that Plaintiff's mental impairments essentially precluded Plaintiff from working due to extreme limitations in a number of work related areas (AR 448-449). Plaintiff contends that the ALJ's RFC assessment did not acknowledge her serious difficulties in maintaining concentration, persistency or pace as found by Dr. McDonald. *See* ECF No. 9, p. 6.

I find, contrary to Plaintiff's contention, that the ALJ gave adequate consideration to Dr. McDonald's opinions in fashioning her RFC. The ALJ recognized that Dr. McDonald concluded that Plaintiff had significant limitations in maintaining concentration, persistence or pace in her report dated October 29, 2007 (AR 21). However, Dr. McDonald's opinions, as implicitly noted

by the ALJ, did not relate to Plaintiff's condition during the relevant time period, namely, from June 15, 1993 through September 30, 1997 (AR 22). Dr. McDonald opined that Plaintiff was disabled since 2002, a period of approximately five years after the expiration of Plaintiff's insured status. Accordingly, Dr. McDonald's opinions have no relevance to Plaintiff's condition prior to the expiration of her insured status. *See e.g., Tecza v. Astrue*, 2009 WL 1651536 at *10 (W.D.Pa. 2009) (disability opinions generated thirteen months and twenty months after insured status expired had no relevance to Plaintiff's condition prior the expiration of his insured status; opinions were temporally remote and did not address plaintiff's level of functioning during the relevant time period); *Glanton v. Astrue,* 2009 WL 426614 at *2 (W.D.Pa. 2009) (disability opinions rendered over eight and twenty-five months after the claimant's DIB coverage expired did not reflect claimant's condition before expiration of insured status).

Finally, Plaintiff argues that the ALJ should have accepted the vocational expert's testimony that no jobs would be available to Plaintiff if she had irregular attendance and/or was off task ten to fifteen percent of the work day for an extended period of time. *See* ECF No. 9, p. 7. Testimony of a vocational expert concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the hypothetical question accurately portrays the claimant's individual physical and mental impairments. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). An ALJ is therefore only required to accept such testimony if such limitations are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). Here, the medical records during the relevant time period do not support Plaintiff's contention that her mental impairments would cause irregular attendance or cause her to be off task ten to fifteen percent of the work day for an extended period of time. Accordingly, Plaintiff's proposed limitations are not supported by substantial evidence and the ALJ's failure to adopt such limitations was not error.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment will be denied and Defendant's motion for summary judgment will be granted. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DEBRA M. CLEMENTE,                              )
                                                )
                      Plaintiff,                )         Civil Action No. 10-159 Erie
                                                )
          v.                                    )
                                                )
MICHAEL J. ASTRUE,                              )
Commissioner of Social Security,                )
                                                )
                      Defendant.                )

## ORDER

AND NOW, this 13th day of July, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [ECF. No. 7] is DENIED, and Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Debra M. Clemente.

The clerk is directed to mark the case closed.

                                          s/ Sean J. McLaughlin
                                            United States District Judge

cm:     All parties of record